(No. 14349.—Judgment affirmed.)

THE CENTRAL ILLINOIS PUBLIC SERVICE COMPANY, Plaintiff in Error, *vs.* THE INDUSTRIAL COMMISSION *et al.*— (WALTER D. GOODPASTURE, Defendant in Error.)

*Opinion filed February 22, 1922.*

1. WORKMEN'S COMPENSATION—*an applicant's opinion as to per cent of disability not admissible.* An applicant for compensation is not competent to express an opinion as to the per cent of his disability, and an award based solely on such evidence should be reversed; but it is competent for the applicant to testify as to his physical condition and whether his injuries cause pain in attempting to perform his usual duties or affect his ability to perform such duties.

2. SAME—*when award will be sustained although applicant testifies as to per cent of disability.* Although the applicant is permitted to testify before the arbitrator that in his opinion his injury caused a loss of fifty per cent in the use of his arm and leg, an award for twenty-five per cent loss of use will not be set aside because of such improper evidence, where there was competent testimony by the applicant as to the character, extent and effect of his injuries and a personal examination of the applicant's injuries by the commissioner who made the award.

3. SAME—*when award will not be reversed for failure to order a physical examination.* Where the employer demands a physical examination of the applicant for compensation and the applicant agrees to an examination by a physician to be selected by the Industrial Commission, but the commissioner postpones the examination until after the evidence is heard and he has made a personal examination of the applicant, after which the parties agree that the matter of an examination by a physician at some subsequent time shall be left to the discretion of the commissioner, the employer is not entitled to a reversal of the award because no physical examination was made.

WRIT OF ERROR to the Circuit Court of Macoupin county; the Hon. FRANK W. BURTON, Judge, presiding.

VAUSE & KIGER, for plaintiff in error.

KERR, MACDONALD & MURPHY, for defendant in error.

Mr. JUSTICE FARMER delivered the opinion of the court:

This writ of error was allowed on the petition of the Central Illinois Public Service Company to review a judgment of the circuit court of Macoupin county affirming an award for compensation to Walter D. Goodpasture, its employee. Goodpasture was a lineman, and August 10, 1918, while engaged in the performance of his duties he came in contact with high voltage wires and received severe injuries. He returned to work for plaintiff in error December 1, 1918. He was given work of a lighter character and continued to work in different capacities. In August, 1919, while still working for plaintiff in error, he filed an application for adjustment of his claim and the hearing came before the arbitrator October 30, 1919. The further hearing was continued by the arbitrator to December 2 for the purpose of having an examination made of applicant's eyes. November 13 plaintiff in error mailed to Goodpasture a written request for physical examination to be made by Dr. Carter, of Mattoon, Illinois, on a date to be fixed by applicant, who lived in Virden, Illinois, plaintiff in error to pay all expenses for such examination and for applicant's necessary loss of time, and at the same time mailed a copy of the request to his attorneys and a copy to the Industrial Commission. At the conclusion of the hearing before the arbitrator counsel for the plaintiff in error called the arbitrator's attention to the demand for a physical examination and that none had been made, and asked that the hearing be continued for an examination. The request was denied and an award made of $11.42 per week for 15 weeks, the period of temporary total incapacity, and $11.42 per week for 93¾ weeks for twenty-five per cent loss of the use of left leg and twenty-five per cent loss of the use of right arm. Plaintiff in error filed with the Industrial Commission a petition for review of the award. In its petition the plaintiff in error alleged it requested an order on applicant to

submit to a physical examination by Dr. Carter, of Mattoon, Illinois, on a date to be named by applicant and notice given of the date selected, at the expense of plaintiff in error, or that the examination be made by a qualified, impartial physician selected by the commission, and that he report the result of his examination to the commission. The case came on for hearing by the commission April 2, 1920, and counsel for plaintiff in error made a demand for a physical examination. The commissioner stated the practice of the commission was to defer ordering a physical examination until the hearing was finished, and if it then thought the examination should be made it would be ordered made by the commission's doctor in Chicago at the employer's expense. The commissioner said he might do that, but at the time he was speaking he did not know a thing about the case, and the hearing then proceeded. During the testimony of the applicant he was asked by plaintiff in error if he was willing to submit to a physical examination, and he said he was willing to submit to such an examination by a physician designated by the commission. The record shows the commissioner examined applicant's person in an adjoining room, and then the following agreement was made: "It is agreed that if, after reading the record, the commissioner desires to have the applicant examined, that he may be examined by a physician selected by the commission, and the physician may file his report, which will be considered in evidence, and that both parties waive cross-examination of the physician selected by the commission, and the respondent will pay the applicant's expenses to Chicago for such an examination." There was no physical examination ordered, and the award of the arbitrator was ordered to stand as the decision of the Industrial Commission.

On the hearing before the arbitrator the applicant described his injuries and how they affected his ability to use his left leg and right arm. He was then asked what per cent of the loss of use of his leg and arm he had sustained,

and over objection he was permitted to answer. He said about fifty per cent. There was no other testimony as to the percentage of the loss of use of his leg and arm.

Plaintiff in error urges as grounds of reversal that the award was based on incompetent testimony, and that it was erroneously denied the right to have a physical examination. The argument in support of the objection that there is no competent evidence to sustain the award is, that the applicant was permitted to testify to the percentage of the loss of use of his arm and leg, and it is claimed that is the only evidence to sustain an award for partial loss of use of those members; that it was not competent for him to express an opinion on that question, and for that reason the judgment should be reversed. We have held that the applicant is not competent to express an opinion as to the per cent of his disability, and where there is no other evidence in the record from which the per cent of disability can be determined the award should be reversed. (*Hafer Washed Coal Co.* v. *Industrial Com.* 293 Ill. 425; *International Coal Co.* v. *Industrial Com.* id. 524; *St. Louis Smelting Co.* v. *Industrial Com.* 298 id. 272.) The applicant testified at the time of his injury he was on a building that was being moved, taking care of plaintiff in error's wires, and came in contact with a 2300-volt line, which caused him to fall from the building. His clothing was set on fire and he received a burn on the right side of the arm, extending up under the arm and down the waist line past the center of the back and on down to his knee. He received a burn six inches long and an inch wide on the buttock. He received a burn on his left leg about eight inches long. It started about four inches below the hip joint and extended diagonally almost to the knee. The burn was very deep and was from one and a half to one and three-quarters inches wide in the widest part. He testified he could not walk long without his leg being affected and it worried him

to stand on his feet much of the time; that he suffered pain,—worse sometimes than at other times,—and occasionally had a numb feeling in his leg.  Applicant testified before the commissioner, on review, that he and his brother were then running a garage; that he could do light work but his brother did all the heavy work; that work affected his shoulders, and if he undertook to work under a car he often got cramps in his leg and had to get out; that cranking a car two weeks before so affected him that he had to stay in bed all next day and had been under a doctor's care since.  The record shows the commissioner examined applicant's person in an adjoining room.  It was competent for the applicant to testify as to his physical condition and whether his injuries caused pain in attempting to perform his usual duties or affected his ability to perform such duties.  (*International Coal Co.* v. *Industrial Com. supra.*)  The commissioner did not accept the opinion of the applicant as to the percentage of the loss of use of his leg and arm, but after a personal examination made by himself the percentage of loss was fixed at twenty-five per cent.  In view of this record we do not think it can be said that the award was based on the incompetent expression of the applicant's opinion as to the per cent of the disability.  The applicant's testimony as to the nature, character, extent and effect of his injuries was not controverted, and independently of the opinion expressed by him, it afforded some basis for determining the effect of his injuries, and the personal examination made by the commissioner also afforded some basis for such determination.  The award was based on a finding that the loss of use of the arm and leg was twenty-five per cent.  Applicant expressed his opinion that it was fifty per cent.  It cannot be said, therefore, that the only evidence upon which the award was based was the incompetent opinion of the applicant.

We are of opinion plaintiff in error has waived its right to question the denial of its demand for a physical exami-

nation of the applicant. When the case came on for review before the commissioner his attention was called to the fact that the petition requested the commission to have such examination made and that notice had been given the applicant and his attorneys that such an examination was demanded. When the commissioner's attention was called to these facts some discussion occurred between the commissioner and plaintiff in error's counsel before the hearing was entered upon. The commissioner did not positively refuse to order such an examination made, but stated at the time he was speaking that he knew nothing about the case; that it was the practice of the commission after the testimony was read, if it thought an examination should be made, to order it done at the employer's expense, and said he might do that after he heard the case. The hearing then proceeded, and during the examination of the applicant by plaintiff in error's counsel he stated he was willing to have an examination made by a physician selected by the commission. The hearing then proceeded to its conclusion, and after the commissioner had examined the applicant's person the agreement above set out was made by counsel for the respective parties. As we understand that agreement, its effect was to leave the matter of a physical examination of the applicant to the judgment and discretion of the commissioner, and if such examination was ordered the report of it was to be considered in evidence, both parties waiving the right of cross-examination of the physician. Plaintiff in error is therefore in no position to urge a reversal of the judgment because no physical examination was ordered and made.

The judgment is affirmed.    *Judgment affirmed.*