THE CONSOLIDATED COAL COMPANY, Defendant in Error, vs. THE INDUSTRIAL COMMISSION et al.—(CLYDETTA MENK et al. Plaintiffs in Error.)

*Opinion filed April 20, 1927.*

1. WORKMEN'S COMPENSATION—*evidence must preponderate in favor of claimant.* To justify an award of compensation the evidence must preponderate in favor of the claimant, and it is not sufficient that there is evidence pointing to a right of recovery.

2. SAME—*when claimant not entitled to award for death from tuberculosis.* An award of compensation for death resulting from influenza and tuberculosis contracted nearly four years after an accidental injury is not justified, where all the physicians testify that the injury caused only a muscular strain of the muscles of the back, that there was no trauma when the disease set in and that the muscular strain did not cause the influenza, although one physician testifies that said disease would take hold earlier than it would if the employee had been in good physical condition.

WRIT OF ERROR to the Circuit Court of Macoupin county; the Hon. FRANK W. BURTON, Judge, presiding.

W. J. MACDONALD, (A. W. KERR, of counsel,) for plaintiffs in error.

EDGAR P. HOLLY, (JOSIAH WHITNEL, and H. L. BROWNING, of counsel,) for defendant in error.

Mr. JUSTICE FARMER delivered the opinion of the court:

This writ of error was granted by this court upon the petition of Clydetta Menk and Gloria Menk, widow and child of Charles Menk, deceased, to review a judgment of the circuit court of Macoupin county setting aside the decision of the Industrial Commission awarding compensation for the death of Menk.

Charles Menk, while employed in the coal mine of defendant in error, was accidentally injured May 5, 1920. He was temporarily totally disabled for almost four months

and was paid compensation for that period, after which he went to work for another employer. He filed an application for adjustment of compensation, which was finally denied in 1923. He died of tuberculosis in July, 1924, and his wife filed an application for compensation for herself and minor child on the ground that her husband's death resulted from the injury he received in May, 1920, while in the employ of defendant in error. The case was heard before an arbitrator and the widow was awarded compensation. The claim was reviewed by the Industrial Commission on petition of the coal company and the award made by the arbitrator was sustained. The case was then removed to the circuit court of Macoupin county by *certiorari* and that court set aside the award. This court granted a writ of error to review the judgment. The sole question in the case is whether the death of Menk was the result of the injury he received in May, 1920.

At the hearing of the application of Menk for compensation he testified as a witness in his own behalf and described the accident and his injury. He was riding cars at the mine from the tipple to the lower end. The brake underneath one of the cars caught on the scale frame and threw Menk ten or fifteen feet into the air. He fell on the scale platform flat on his back and was unable to get up. He had to have help to be removed from the mine. At the time of the hearing he was working for the Union Supply Company. Compensation had been paid him for the time he was temporarily totally disabled. He was awarded additional compensation by the commission, but the case was removed to the circuit court of Macoupin county and was there remanded to the Industrial Commission. After a hearing upon remandment the commission set aside the award.

Mrs. Menk testified on the hearing of her application that her husband died July 23, 1924; that she thought he was always a well man before his injury, May 5, 1920;

that after the injury he went to work for another employer, the Union Supply Company, weighing coal and performing other clerical duties; that he started to lose flesh within the last year and looked pale and weak for quite a while; that she noticed there was something the matter with him from the time he was hurt; that he lost weight and complained of his back and underneath his shoulder-blade; that he went to the hospital during his last illness; that before he went he had developed a cough, which became worse before his death; that he died three weeks after he returned from the hospital.

Dr. Hunter, a witness for defendant in error, testified he treated Menk for the injury received May 5, 1920, and he had complained of his back ever since that time. From his examination and the X-ray pictures that were taken there was no injury to any of the bony structure. He had a hernia for a long time. The doctor began treating him again in December, 1923, when he developed an attack of influenza. He could see no connection between the attack and the injury of 1920. Menk sufficiently recovered to be up and around but kept on developing bronchial symptoms, and complications followed. He had been up and around for a good while before the doctor diagnosed his disease as tuberculosis, from which disease he died. After describing the condition shown by the X-ray pictures taken of the injury in 1920, the doctor said he did not think there was any direct connection of tuberculosis with the injury received in 1920; that the only possible connection that could be figured was that the injury resulted in a general weakened condition and to make him more susceptible to the disease, but the disease itself had no connection with the injury. The patient developed paralysis of the vocal chord, and he sent him to Dr. Saner, a specialist on the nose and throat, to discover, if possible, the cause. A fluid developed within the chest, and the witness drew off some of it to see whether it would make any difference, and there

was no improvement. The doctor did not think it was the proper thing to do. The patient went to the hospital and passed out of the doctor's care. He never discovered any fracture of the spine from the injury of 1920, which was about the dorsal region, nor ever found any injury to any of the vertebræ. Menk was always complaining of bad health and did not seem the same. The influenza attack was in December, 1923. The doctor could find nothing more than a muscular strain resulting from the injury, and the X-ray pictures showed no indication of fluid in the chest cavity. The patient's lung condition was the cause of his death. Lung infiltration and pleuritis come from tuberculosis of the lung. The only direct or indirect effect of the injury upon the final illness was that Menk was probably in a more or less weakened condition and the disease would take hold easier than if he were strong.

Dr. Zoller testified for defendant in error that Menk came to his hospital May 8, 1924, and was under his care until June 11, when he went home and went into the care of Dr. McBrien. He returned to the hospital June 16 and remained there until the 27th. When he came to the hospital he was having chest trouble, dyspnea, and was unable to breathe. The pressure from a fluid in his left chest was the cause of that. His left lung was consolidated with the fluid in the pleural cavity, and his right lung showed consolidated areas throughout. The doctor removed about two quarts of sero-purulent fluid from the left chest cavity and introduced air. The patient said his lung trouble started in November, 1923, when he was taken sick with a cough and fever, and that Dr. Hunter waited on him at that time. The doctor testified he could find no indication of trauma at all.

Dr. McBrien testified he had known Menk and treated him at different times from 1901 or 1902. He didn't treat him for the injury of 1920. His last treatment of the patient was about two months before his death. He was

called to Menk's home to see him and ordered him taken to the hospital in Litchfield, and, Dr. Sihler took care of him. Witness made a physical examination. He asked to have an X-ray examination of the chest and a bacteriological examination of the sputum. He never examined the X-ray pictures but examined the report of the sputum. When witness saw him in 1923 the patient was in the last stage of pulmonary tuberculosis. In his opinion the injury of 1920 could not have brought on the disease of which he died.

We have endeavored to briefly state the most material points of the testimony. The proof shows Menk was painfully and severely injured in May, 1920. The injury was muscular and did not affect the bony structure. He was temporarily totally disabled about four months and afterwards returned to work for another company, for a while receiving more wages than he did from defendant in error, but later his salary was reduced, owing to slack business of his employer. In November or December, 1923, he had an attack of influenza, from which he never entirely recovered. Dr. Hunter testified he got up and around, but continued to develop bronchial symptoms and finally tuberculosis. All the medical testimony was that the injury of 1920 did not cause the tuberculosis of which Menk died. Mrs. Menk testified he lost weight after the injury and looked pale and weak, and after developing influenza he never so sufficiently recovered that he did not every day spend some time in bed. We have set out Dr. Hunter's testimony that the only direct or indirect connection between the injury and the tuberculosis was that the patient was more or less weakened by the injury and the disease would take hold quicker than if he were physically strong.

Plaintiffs in error rely upon *Kivish* v. *Industrial Com.* 312 Ill. 311, *Timmermann* v. *Industrial Com.* 305 id. 485, and *Lumaghi Coal Co.* v. *Industrial Com.* 305 id. 475. In the *Kivish case* Kivish was buried under a fall of coal,

which injured and bruised his chest. He was taken to a hospital in St. Louis and one of his legs was there placed in a cast, the cast being afterwards taken off and the knee baked. He was attacked by influenza and pneumonia while there, which caused his death in the hospital. The injury occurred April 11 and he died February following. There was proof that after the injury he coughed and spat blood on several occasions and did not improve much before being taken to the hospital. The court held that pneumonia developed before the proof showed the injuries to the chest had healed, and that it was a reasonable conclusion that pneumonia was a result of the injury. In the *Timmermann case* the employee was injured in the chest and also received other serious injuries. The date of the accident the doctor found him coughing and complaining of pains. The second day he developed pneumonia and died a few days later, and the court held the evidence justified the award in that case on the ground that the injury was the cause of the death. In the *Lumaghi Coal Co. case* the employee received an injury January 19, 1920. He suffered a complete fracture of the fourth rib on the right side, a serious fracture of the sternum and bruises on his back and chest. He was taken to a hospital, where he was treated until February 28 and then removed home. Pneumonia developed the next day and he died March 9. He was confined to his bed continuously from the time he was injured, and the court held the Industrial Commission was warranted in finding that the injury received resulted in pneumonia, from which the employee died.

A recovery by a claimant must be based upon a preponderance of the evidence. Unless the evidence preponderates in favor of the claimant the claim must fail. It is not sufficient that there may be evidence pointing to the claimant's right of recovery, but it must preponderate before an award can be allowed. This has been so often decided by this court that it would seem unnecessary to cite

the cases, but we cite a few: *Hafer Washed Coal Co.* v. *Industrial Com.* 293 Ill. 425; *City of Joliet* v. *Industrial Com.* 291 id. 555; *Jersey Ice Cream Co.* v. *Industrial Com.* 309 id. 187; *Perry County Coal Corp.* v. *Industrial Com.* 311 id. 266.

In *Springfield District Coal Co.* v. *Industrial Com.* 303 Ill. 455, an employee sustained an injury, and five days later the doctor found him suffering from acute lobar pneumonia. The testimony was that the injury had nothing to do with the death, in the opinion of the witnesses, but the doctor also testified that the employee's weakened condition might have predisposed him to pneumonia. The court held there was an entire failure of the evidence to prove his death resulted from an accidental injury suffered in the employment.

We think the evidence in this case insufficient to establish that the injury received in May, 1920, caused the tuberculosis, which resulted in death four years after. While Dr. Hunter testified that Menk was weakened by his injury and the disease would take hold earlier than it would if he had been in good physical health, he also testified that the injuries were muscular; that he developed influenza in December, 1923, and the doctor did not believe that the conditions could have existed that caused the attack of influenza, because before that time the patient had never had fever. Dr. Zoller testified he could find no indications of trauma when he examined the patient in 1924; that the patient gave a history of having taken sick with a cough and fever in November, 1923. Dr. McBrien testified he was called to treat Menk about two months before his death and found him in the last stage of pulmonary tuberculosis, and that in his opinion the muscular strain to his back which he received in 1920 had nothing to do with that condition.

The sole question for determination is whether the evidence justified the award on the ground that the injury

received in 1920 caused the influenza and tuberculosis which caused Menk's death. We are of opinion that under the rules laid down in numerous cases the evidence was insufficient to justify the award and that the court did not err in reversing and setting it aside.

The judgment will be affirmed. *Judgment affirmed.*