ANTONIO PASQUARELLO v. CHARLES E. SHEPARD, INC., ET AL.

MALTBIE, C. J., BROWN, JENNINGS, ELLS and DICKENSON, JS.

Argued October 1—decided November 8, 1946

*Harold K. Watrous,* with whom were *James J. Shea* and, on the brief, *Daniel G. Campion,* for the appellant (defendant).

*Edward J. Myers,* for the appellee (plaintiff).

BROWN, J.   Upon this plaintiff's claim for workmen's compensation, the hearing before the commissioner was for the purpose of determining his average weekly wage as employee of the Shepard company.   The commissioner ruled that it was $31.-92.   The company and its insurer appealed to the Superior Court, which sustained the commissioner's ruling.   From that judgment the defendants have appealed to this court.

The following facts found by the commissioner are not disputed.   On April 7, 1945, the plaintiff was an employee of the defendant Shepard company within the Workmen's Compensation Act.   He had been its employee for about eighteen years as general handy man about its premises, an exclusive

land development known as "Pinehurst" in the town of Hartland. His duties were varied and numerous. He was a caretaker, watchman, patrolman, carpenter, mason and jack-of-all-trades for the employer and for the vendees or grantees of land which it had sold in the development. The latter had formed themselves into an informal organization known as "Pinehurst Lakes Club." The plaintiff was hired originally by the president of the employer when the development first started, and he continued in its employ until the date of his injury. The right of control over the plaintiff was at all times vested in the employer and it had the exclusive right to supervise his activities or discharge him.

On April 7, 1945, while the plaintiff was at work repairing the roof of the employer's "clubhouse," a building owned and maintained by it for the benefit of itself, its grantees and the plaintiff in his capacity as caretaker, he fell to the ground and sustained the serious injuries which gave rise to his claim for compensation. His duties consisted of looking after the real-estate development generally for the good of the members of the association and for the benefit of the employer. At the time of the accident the Shepard company was paying to the plaintiff each month $138.33; $113.33 of this it collected from the members of the informal association and the remaining $25 it paid out of its own funds.

The commissioner further expressly found that "at the time of said accident the total wages received by the claimant from the employer in whose service he was injured were $138.33 monthly," and ruled that therefore "this sum represents his wage for compensation purposes and hence his average week-

ly wage is $31.92," and "it makes no difference that a large part of the wages paid by the employer were as a result of contributions made by persons not members of the employer-corporation." The defendants have assigned error in the court's refusal to correct the commissioner's finding by substituting in the first two of these statements "$25" for "$138.33" and "$5.78" for "$31.92" and by striking out the third. The question so presented for decision is whether the plaintiff's average weekly wage is to be determined upon the basis of the total monthly amount which was actually paid him by the Shepard company or upon the basis of $25 only, which was the measure of the ultimate net cost to it of such payment. The answer is found in the application of § 5238 of the General Statutes to the undisputed facts above recited.

The pertinent provision of the statute states that "the average weekly wage shall be ascertained by dividing the total wages received by the injured workman from the employer in whose service he is injured during the twenty-six calendar weeks immediately preceding that during which he was injured, by the number of calendar weeks during which . . . such workman was actually employed by such employer." Our first inquiry is whether upon the undisputed facts the Shepard company was, and the members of the informal association were not, "the employer in whose service" the plaintiff was "injured"; that is, whether the company was the sole employer. The facts are conclusive that this was the situation. Not only does the fact expressly found and twelve times reiterated in the finding— that the company was "the employer"—stand unchallenged, but this is corroborated by the further

facts that it had the "right of control" at all times and "the exclusive right to supervise the activities of or to discharge" the plaintiff. These are sufficient to show the essential requisites of an existing employer-employee relationship; *Kinsman* v. *Hartford Courant Co.*, 94 Conn. 156, 159, 108 A. 562; *Cumbo* v. *E. B. McGurk, Inc.*, 124 Conn. 433, 435, 200 A. 328. In fact, as a practical matter, the finding that the company had "the exclusive right to supervise the activities of or to discharge" the plaintiff must be held the equivalent of one that it had "the general control over what work shall be done and how," which the latter case holds sufficient to establish an employer-employee relationship. Therefore, the words last quoted from the finding have a double significance, for in addition to corroborating the fact that the Shepard company was the plaintiff's employer they also establish that it was his sole employer. This necessarily follows from the finding that the company's right to "supervise" and "discharge" was "exclusive," which negatives the existence of any such right in the members of the association.

Furthermore, the right in an employer to discharge is recognized as an important element in determining whether an employer-employee relationship exists. *Press Publishing Co.* v. *Industrial Accident Commission*, 190 Cal. 114, 120, 210 P. 820; *Meyer* v. *Industrial Commission*, 347 Ill. 172, 179, 179 N.E. 456; *Davis* v. *Julian*, 152 Kan. 749, 756, 107 P.2d 745; *Clark's Case*, 124 Me. 47, 50, 126 A. 18. This power is particularly significant in the present connection since a discharge of the plaintiff by the company would terminate his right to carry on the employment for which he was hired, even as re-

gards work for the members of the association. That the Shepard company was the plaintiff's sole employer, as shown by the facts found to which we have referred, finds further confirmation not only in the omission from the finding of any statement that the members of the association were the plaintiff's employers and of any of the subordinate facts essential under our decisions to establish this fact but also in the failure of the defendants to request a correction of the finding in this regard and to assign error in its denial. Practice Book § 258 et seq. The record leaves no doubt that the company was the plaintiff's sole employer.

The further fact that the plaintiff at the time of his injury was engaged in repairing for the company's benefit the roof of the "clubhouse" building owned and maintained by it confirms that he was acting as the company's employee in its service when he was hurt. Under the circumstances, that the building was maintained for the benefit also of the company's grantees and the plaintiff is immaterial. The same is true of the payment by the grantees as members of the association to the company of $113.-33 each month, which was utilized as part of the total monthly salary of $138.33 paid by it to the plaintiff. That a third party contributes toward the wage or salary paid by an employer to its employee does not necessarily affect the status of such employer-employee relationship. *Hendershot* v. *Lincoln,* 136 Neb. 606, 286 N.W. 909; *Claremont Country Club* v. *Industrial Accident Commission,* 174 Cal. 395, 398, 163 P. 209; *Essex County Country Club* v. *Chapman,* 113 N.J.L. 182, 184, 173 A. 591; *Gates's Case,* 297 Mass. 178, 182, 8 N.E.2d 12; *Blake* v. *Department of Labor & Industries,* 196 Wash.

681, 687, 84 P.2d 365; 1 Schneider, Workmen's Compensation (Perm. Ed.) p. 598. This aside, the facts here indicate that, in so far as any benefit to the company's grantees is concerned, it accrued to them not as employers of the plaintiff but rather through their arrangement with the company. Where the employer, while receiving contributions from others, as in this case, itself pays the entire compensation of the employee, the amount of the award is to be based upon that compensation. *Chicago Traction Co.* v. *Industrial Board,* 282 Ill. 230, 233, 118 N.E. 464. The company was the plaintiff's sole employer, and the plaintiff was engaged in its and not their service when injured.

Since this was the situation, the remaining inquiry as to the effect of § 5238 finds answer in its specific and unambiguous language. Its provision that "the average weekly wage" is to be determined in the manner prescribed upon the basis of "the total wages received by the injured workman from the employer in whose service he is injured" can warrant but one conclusion, that the plaintiff's average weekly wage was $31.92 as ruled by the commissioner.

There is no error.

In this opinion the other judges concurred.