OMER MATHURIN v. CITY OF PUTNAM ET AL. (3118)

OMER MATHURIN v. CITY OF PUTNAM ET AL. (3119)

MALTBIE, C. J., BROWN, JENNINGS, DICKENSON AND INGLIS, JS.

Argued December 6, 1949—decided January 31, 1950.

*Eugene A. Massey,* with whom, on the brief, was *Harold K. Watrous,* for the appellants (named defendant et al.).

*Frank E. Dully,* with whom on the brief, was *Edward D. O'Brien,* for the appellees (named defendant et al.).

*William J. Willetts,* with whom, on the brief, was *Griswold Morgan,* for the appellees (defendants Town of Putnam et al.).

DICKENSON, J. In the first of these appeals the city of Putnam and its insurer have appealed from a decision of the Superior Court confirming an award of compensation to the plaintiff to be paid by them. In the second appeal, the same two defendants have appealed from the dismissal by the Superior Court of an appeal from the denial of a motion which they made to reopen the award and in which they claimed that by mistake the award was made against them when it should have been made against the town of Putnam and its insurer.

Some question has arisen whether it was proper in this case to take separate appeals to this court from the two decisions of the Superior Court. Where, after judgment and while an appeal is pending, a ruling is made as to some matter involved in the controversy between the parties, the proper procedure is, not to file a separate appeal from that ruling, but to bring it within the scope of the appeal which has already been taken by amending the assignments of error to include it and supplementing the record by any additional matter, for example, a further finding, necessary for its proper presentation to this court. *Valluzzo* v. *Valluzzo,* 103 Conn. 265, 266, 130 A. 126; *Young* v. *Polish Loan & Industrial Corporation,* 126 Conn. 714, 715, 11 A. 2d 395; see *Hiss* v. *Hiss,* 135 Conn. 333, 338, 64 A. 2d 173. In a workmen's compensation case, if an appeal has been taken from an award and is pending in the Superior Court, a ruling upon a motion affecting that award made subsequent to the appeal may, by analogy, be brought within the scope of that appeal; this can be accomplished by the filing of a supplementary appeal with the commissioner within the time allowed for taking appeals from awards, by proceedings before him analogous to those taken on an original ap-

peal, and by amendment of the reasons of appeal filed in the Superior Court to include the new matter. In the present case, however, the appeal from the award had gone to judgment in the Superior Court before the motion to reopen was filed with the commissioner; that motion was based on the provision in § 7434 of the General Statutes that the commissioner "shall . . . have the same power to open and modify an award as any court of the state has to open and modify a judgment of such court." Mistake is one of the grounds upon which a commissioner may reopen an award under this provision. *Kurzaji* v. *Warner & Bowman,* 106 Conn. 90, 92, 137 A. 19. The denial of a motion to reopen an award made after an appeal from the award to the Superior Court has gone to final judgment is like a proceeding to secure a new trial under § 8013 in a regular court action after it has been finally determined; and where, as in this case, the denial of a motion cannot be brought within the scope of an appeal from the award pending in the Superior Court, it is the proper subject of a separate appeal to that court, and from its decision, to this court. *State* v. *Kemp,* 124 Conn. 639, 644, 1 A. 2d 761.

The finding in the first action is not attacked. The facts are as follows: The plaintiff is regularly employed as a brakeman. He has been a supernumerary policeman of the city of Putnam since August, 1945. When acting in the latter capacity he wears the uniform of the city police department and is assigned by the chief of police or his assistants to substitute for a regular policeman or to do special work. During most of the football season he had been working at the football field of the Putnam High School under such an assignment. At the beginning of the season the athletic director of the school explained to him what he was expected to do. He was paid by the board of educa-

tion, and his pay was usually sent to the office of the police department in an envelope bearing his name and there delivered to him.

On October 26, 1946, the plaintiff was assigned to duty at the football field by the chief of police. A police sergeant was also on duty at the field. Early in the afternoon the ticket seller at the field called the plaintiff's attention to the fact that a man had refused to purchase a ticket. The ticket seller and the plaintiff had a discussion with the man and when he refused to purchase a ticket the plaintiff ordered him from the field. Upon his refusal to leave, the plaintiff attempted to escort him from the field and, when he resisted, placed him under arrest. The man kicked the plaintiff in the ankle, and in an ensuing scuffle the plaintiff's ankle was broken.

The commissioner ruled that at the time of the injury the plaintiff was an employee of the police department of the city and was performing his duties as such and that his injury arose in the course of his employment. The commissioner found that it was agreed that the workmen's compensation risk of the city was covered by the defendant Travelers Insurance Company with the exception of the police and fire departments and relief workers and that the risk of the police department was covered by the defendant Great American Indemnity Company. The latter company claimed that the plaintiff was employed by the board of education and not by the police department. The commissioner found that, while apparently neither insurance company had included moneys paid the plaintiff for acting as a supernumerary policeman on the football field in its audit, upon which its premium was based, that fact was not determinative of the issue. He made an award against the Great American Indemnity Company and the city of Putnam and dis-

missed the claim against the Travelers Insurance Company.

The Workmen's Compensation Act defines employer to mean "any person, corporation, firm, partnership, voluntary association, joint stock association, the state and any public corporation within the state using the services of another for pay." General Statutes § 7416. The definition of employee includes "any salaried officer or paid member of any police department." The immediate question before us is not whether in fact the plaintiff was the employee of the police department but whether the commissioner's conclusion that he was, when considered on the basis of the subordinate facts, was so unreasonable and illogical as to be an abuse of discretion. *Leszczymski* v. *Radel Oyster Co.*, 102 Conn. 511, 514, 129 A. 539. The award must stand unless it results from an incorrect application of the law to the subordinate facts or from an inference illegally or unreasonably drawn from them. *DiLauro* v. *Bassetti*, 133 Conn. 642, 645, 53 A. 2d 512; Conn. App. Proc. § 121.

We have considered the question of the employer relationship of a special officer detailed to assist private persons in the management of their businesses on several occasions. In *Hartford* v. *Parsons,* 87 Conn. 412, 87 A. 736, an action brought by the plaintiff to recover the cost of a fireman's services, we stated (p. 415) that a theater manager can be required by ordinance, as "a regulation imposed for the benefit of the public," to have a member of the police or fire department in attendance during performances, and that, in the absence of any contractual obligation or express provision by ordinance, the expense of this must rest upon the city. In *Lake* v. *Bridgeport,* 102 Conn. 337, 128 A. 782, where the workmen's compensation statute included in the definition of employee a paid member

of the police department and an ordinance provided that the board of police commissioners might, on application from a business firm, appoint special officers with authority as police officers in connection with that business, we held that an officer so appointed was an employee of the city under the compensation statute even though the wages which he received from the police department were supplied by the business firm. We said (p. 341), citing *Hartford* v. *Parsons,* supra: "Manifestly the attendance of a policeman at public gatherings in theatres is as much for the safety of the public as for the benefit of the management. It is actually and ostensibly an exercise of the police power." The defendants attempt to distinguish these cases from the one before us on the ground that in them police supervision was required by ordinance and here it was not. *Krowka* v. *Colt Patent Fire Arm Mfg. Co.,* 125 Conn. 705, 8 A. 2d 5, was an action wherein recovery was sought of the defendant for damage by reason of an assault by supernumerary policemen furnished by the police department at the request of the defendant upon its agreement to pay their wages. We said (p. 712), citing numerous cases to which reference may be had: "The general rule in such a case is that a private person or corporation is not responsible for the acts of a special police officer, appointed by public authority, but employed and paid by the private person or corporation, when the acts complained of are performed in carrying out his duty as a public officer." We added (p. 713): "Whether the officer was acting within the scope of his employment as the defendants' servant or in his capacity as a public officer, may present a question for the jury. . . . Where upon the record as in this case, however, a conclusion that the police officers are acting as the servants of the defend-

ant cannot be reasonably supported, it becomes a question of law for the court."

It is true, as the defendants contend, that the presence of a special officer was not required by ordinance at the football field, so far as appears by the record. The finding is that it was the plaintiff's duty to remove from the grounds persons who refused to purchase tickets. Assuming this to be a duty that the plaintiff owed the board of education and that he was its agent or employee in exercising it, his injury occurred after he had arrested the man. No authority existed in the board of education to control the officer in this respect. The commissioner could properly have found that he was acting "in his capacity as a public officer." *Krowka* v. *Colt Patent Fire Arm Mfg. Co.*, supra; see *Zygmuntowicz* v. *American Steel & Wire Co.*, 240 Mass. 421, 425, 134 N. E. 385; *Foster* v. *Grand Rapids Ry. Co.*, 140 Mich. 689, 692, 104 N. W. 380. He was a duly appointed supernumerary officer of the police department and continued as such to the date of his injury. *Lake* v. *Bridgeport*, 102 Conn. 337, 342, 128 A. 782. The board of education could not employ him as a police officer or discharge him as such. So far as appears, the board did not enter into any contractual relation with him; apparently on its application to the police department his assignment to duty was made by that department and a police sergeant was also assigned to duty at the field. It is true that the board of education paid for the plaintiff's services, but that fact is not controlling. *Pasquarello* v. *Charles E. Shepard, Inc.*, 133 Conn. 215, 220, 50 A. 2d 418. The trial court was not in error in dismissing the appeal and confirming the award on the ground that the plaintiff was employed by the police department of the city.

The reasons of appeal from the motion to reopen were based upon the fact that, after the award was

granted, it was discovered that by mistake it had been assumed that the board of education was an agency of the city of Putnam and so within the insurance coverage of a policy issued by the Travelers Insurance Company, whereas the board was an agency of the town of Putnam, a separate municipality, and so within a policy issued by the American Surety Company of New York. The commissioner found that the police department, which was under the jurisdiction of the city and was within the policy issued by the Great American Indemnity Company, was the employer of the plaintiff, and we have found no error in this conclusion. If the award had been against the wrong defendants, a different question would have been presented. The fact that another defendant, who was not the plaintiff's employer, was not a party to the original hearing would not vitiate the award. The presence of the town and its insurer would not have helped the defendants. While the town might have been a suitable party, it was not a necessary one in view of the factual situation. See *State ex rel. Bulkeley* v. *Williams,* 68 Conn. 131, 157, 35 A. 24, 421. As the commissioner stated in ruling on the motion, no evidence was presented which would lead to a conclusion different from that reached on the original hearing, namely, that the plaintiff was an employee of the police department. The issue of employment was fully tried at that hearing. See *Wootteon* v. *National Hatters, Inc.,* 128 Conn. 1, 3, 18 A. 2d 371.

We have examined the cases cited by the defendants and in all of them there was a direct contractual relationship between the officer and the person held liable to him, and none of them presented a situation where there was no such contract and the officer was assigned by his superior to duty at a place where numerous peo-

ple would be gathered on at least a semipublic occasion.

The commissioner was not in error in denying the motion to reopen, and the trial court correctly so held.

There is no error on either appeal.

In this opinion the other judges concurred.